NATIONAL MORTGAGE CORPORATION v. AMERICAN TITLE INSURANCE COMPANY

No. 81

(Filed 1 February 1980)

1. **Judgments § 36— collateral estoppel by judgment—identity of parties**

In order for collateral estoppel by judgment to apply, the parties in the instant case must be identical to or in privity with the parties in the prior action.

2. **Insurance § 148— title insurance—defects in title when issued**

Nothing else appearing, title insurance operates to protect a purchaser or mortgagee against defects in or encumbrances on title which are in existence at the time the insured takes his title.

3. **Insurance § 148— title insurance—coverage provided**

Where a policy of title insurance issued by defendant insured the lien of plaintiff lender's deed of trust on property leased by the owners to the borrower "all as of the 18th day of July, 1969, at 12:26 p.m. the effective date of this policy" and excluded from coverage defects, liens, encumbrances, adverse claims against the title as insured or other matters "attaching or created subsequent to the date hereof," the policy only insured (1) that on 18 July 1969 fee simple title was vested in the lessors, and (2) that an agreement subordinating the lessors' fee simple title and the deed of trust to plaintiff were sufficient on that date to give plaintiff a first lien on the property.

4. **Insurance § 148— title insurance—loss of lien of deed of trust—matters not in existence when policy issued**

Plaintiff lender was not entitled to recover under its policy of title insurance protecting plaintiff from defects in title on 18 July 1969 for losses it

allegedly suffered by reason of the invalidity of the lien of its deed of trust where one of the conditions imposed by the lessors of the land in question for their subordination agreement to permit plaintiff's deed of trust to become a first lien on their property was that proceeds of loans secured by said deed of trust would be used by the lessee for the construction of improvements on the land; plaintiff's disbursement of the loan proceeds on 24 July 1969 before any construction began and the subsequent misappropriation of these funds caused the nullification of the subordination agreement and loss of plaintiff's lien on the property; and the failure of the subordination agreement and the consequent loss of plaintiff's lien thus cannot be attributed to matters in existence on the date the policy was issued.

DEFENDANT appeals from decision of Court of Appeals, 41 N.C. App. 613, 255 S.E. 2d 622 (1979), reversing judgment of *McKinnon, J.,* entered 28 January 1978 in ORANGE Superior Court.

Plaintiff sues under its policy of title insurance with defendant for losses it allegedly suffered by reason of the invalidity of the lien of a deed of trust held by plaintiff on two tracts of land in Orange County, hereafter referred to as the Abernethy property.

No request for a jury trial having been made by either party, the case was duly calendared and called for trial before the Honorable Henry A. McKinnon, Jr., presiding judge, who, after hearing testimony offered by plaintiff and considering documentary evidence offered by both parties, made findings of fact, conclusions of law, and entered judgment in favor of defendant.

Neither party has excepted to the findings of fact made by the trial court. These findings tend to show, in pertinent part, that Jonas Kessing, lessee, held a 60-year lease from M. A. Abernethy and wife Minna K. Abernethy, lessors, to two undeveloped tracts of land on Franklin Street in Chapel Hill owned by the Abernethys. The lease was executed on 15 May 1967 and recorded on 12 July 1968 in the Orange County Registry. Lessee's interest was subsequently assigned to Gordon L. Blackwell and was then assigned by Mr. Blackwell to Jonas W. Kessing Company. Paragraphs 10a and 10b of the lease provide for the subordination of the fee simple title of lessor, and read as follows:

"10a. The Lessor agrees to subordinate and subject its fee simple title in and to the premises to the lien of any mortgages or deeds of trust placed on the premises by the

Lessee to secure construction and permanent financing, including primary financing, for the erection, furnishing and equipping of improvements on the premises provided that under no circumstances shall the maturity date of any such mortgage or deed of trust extend beyond the fifty-ninth year of the term hereof; and at the request of the Lessee will execute any mortgage deed of trust or subordination agreement to effectuate the provisions of this paragraph.

10b. The Lessor shall not be personally responsible for the payment of any such indebtedness secured by the Lessee for the erection of improvements on the premises, and that such financing shall not exceed the actual cost of the aforementioned improvements and equipment."

Prior to 30 June 1969 Jonas W. Kessing Company and National Mortgage Corporation, plaintiff, entered into an agreement and loan commitment whereby plaintiff agreed to make a loan in the amount of $250,000 to be secured in part by a first deed of trust on the Abernethy property on which Jonas W. Kessing Company held the lease. According to Kessing, the purpose of the loan was to build a theater and shops on the Abernethy property.

By an instrument executed on 8 July 1969 at the request of Kessing, Mr. and Mrs. Abernethy agreed to subordinate their fee simple title in the Abernethy property to a deed of trust from the lessee, Jonas W. Kessing Company, to plaintiff, which was to secure the loan being made by plaintiff to Kessing. The subordination agreement stated that the loan being made to Kessing was "for the purpose of erecting certain improvements upon [the Abernethy property]." Additionally, the subordination agreement stated that except for the subordination of the Abernethys' fee simple title, the lease agreement between the Abernethys and Kessing was "to remain in full force and effect." It was known to all parties that at least $125,000 of the loan proceeds was for the construction of improvements on the Abernethy property and it was contemplated that disbursements of the loan proceeds would be made as construction progressed.

The subordination agreement was recorded on 18 July 1969, at 12:23 p.m. The deed of trust giving plaintiff a first lien on the Abernethy property was recorded on 18 July 1969 at 12:26 p.m. By an instrument recorded on 18 July 1969 at 12:31 p.m., Jonas

W. Kessing Company assigned its interest as lessee in the Abernethy property to Village Associates of Chapel Hill.

On 24 July 1969 plaintiff authorized its local attorney, Ted R. Reynolds, to disburse $125,000 to Village Associates of Chapel Hill, an entity controlled by Jonas Kessing in which plaintiff held a 25% interest as limited partner. Mr. Reynolds, in a telephone conversation with Mr. Greene, plaintiff's president, explained to him that the direct disbursement of funds to Mr. Kessing prior to commencement of construction seemed unusual. "I was not in my practice used to disbursing all the money before construction began . . . . [Mr. Greene] thanked me for my concern [and] told me to go right ahead . . . ." Accordingly, on 24 July 1969 Mr. Reynolds disbursed the $125,000 to Village Associates of Chapel Hill. No construction of improvements was begun or funds expended for improvements on the Abernethy property and apparently Jonas W. Kessing misappropriated the $125,000 disbursed to Village Associates of Chapel Hill.

On 1 November 1973, Jonas W. Kessing Company defaulted on the $250,000 promissory note to plaintiff. On 10 December 1973, the trustees for National Mortgage under the subject deed of trust commenced foreclosure proceedings of the Abernethy property. The Abernethys filed suit in January, 1974 to enjoin the foreclosure and declare the deed of trust invalid. Summary judgment was entered in favor of the Abernethys by the Honorable E. Maurice Braswell, presiding judge, on 24 February 1975 in Orange County Superior Court. The Braswell judgment declared in pertinent part that the subordination agreement executed by the Abernethys was null and void and that, as a result, the deed of trust given to plaintiff by Kessing conveyed no valid lien on the Abernethy property. No appeal was taken from this judgment for a consideration of $10,000 paid by the Abernethys to plaintiff.

National Mortgage Corporation thereafter commenced the instant action against American Title Insurance Company. National Mortgage contends that the losses it suffered by reason of the invalidity of its lien on the Abernethy property were within the coverage of the policy of title insurance issued by defendant. The trial court in this case determined that the irregular disbursement schedule authorized by National Mortgage caused the loss suffered by plaintiff thus excluding coverage under the policy.

The Court of Appeals reversed, Clark, J., dissenting, holding that the policy of title insurance did not exclude coverage under the facts of this case. Defendant appealed to this Court as of right pursuant to the provisions of G.S. 7A-30(2).

*Midgette, Page & Higgins, by Keith D. Lembo, attorneys for defendant appellant.*

*Allen, Hudson & Wright, by James Allen, Jr., Marcus Hudson and Katherine S. Wright, attorneys for plaintiff appellee.*

*Sanford, Adams, McCullough & Beard, by E. D. Gaskins, Jr., Charles Montgomery, Peter J. Sarda, Catharine B. Arrowood, for amicus curiae, North Carolina Land Title Association.*

HUSKINS, Justice.

This action is based upon a policy of title insurance issued by defendant. Plaintiff seeks to recover losses allegedly suffered by it by reason of the invalidity of the lien of its deed of trust on the Abernethy property. National Mortgage's lien has been previously declared invalid in a separate action brought by Mr. and Mrs. Abernethy against National Mortgage to enjoin foreclosure proceedings and declare National Mortgage's deed of trust invalid. In that case, Judge Braswell entered summary judgment for the Abernethys. The Braswell judgment declares, in pertinent part, that the subordination agreement executed by the Abernethys is null and void and that, as a result, the deed of trust to National Mortgage by Jonas Kessing Company conveys no valid lien on the Abernethy property.

[1] At the outset we note that the Braswell judgment does not collaterally estop the parties in this case from litigating any issues of law or fact relating to the validity of National Mortgage's lien on the Abernethy property. In order for collateral estoppel to apply, the parties in the instant case must be identical to or in privity with the parties to the Braswell judgment. *See, King v. Grindstaff,* 284 N.C. 348, 200 S.E. 2d 799 (1973); *Masters v. Dunstan,* 256 N.C. 520, 124 S.E. 2d 574 (1962). Defendant in the present case, American Title Insurance Company, was not a party to the Braswell judgment. Nor did American Title stand in privity with the Abernethys or National Mortgage with respect to the property rights being adjudicated in the Braswell judgment, *i.e.,*

title to the Abernethy property. Accordingly, the parties in this case are free to litigate any issues of law or fact relating to the validity of National Mortgage's lien on the Abernethy property.

In the instant case both National Mortgage and American Title agree that the subordination agreement executed by the Abernethys is null and void as a result of which National Mortgage's lien on the Abernethy property is no longer valid. However, the parties disagree as to whether the events which caused the nullification of the subordination agreement and thus the loss of the lien are within the coverage of the title insurance policy. Consequently, the dispositive question on this appeal is whether the events which caused nullification of the subordination agreement were covered by the policy.

Review of the pertinent facts indicates that Mr. and Mrs. Abernethy held fee simple title to two undeveloped lots in Chapel Hill which they leased for a 60-year term to Jonas W. Kessing and by subsequent assignments of lessee's interest to the Jonas W. Kessing Company. The Abernethy-Kessing lease provides in pertinent part that lessors will subordinate their fee simple title to the lien of any deed of trust placed on the property by lessee to secure construction financing for the erection, furnishing and equipping of improvements on the premises. Financing was not to exceed the actual costs of the aforementioned improvements. Pursuant to these provisions of the lease, Jonas W. Kessing Company and the Abernethys executed a subordination agreement in which the Abernethys subordinated their fee simple title to a deed of trust in favor of National Mortgage. The subordination agreement incorporated the provisions of the Abernethy-Kessing lease. Subsequently, Jonas W. Kessing Company executed a deed of trust in favor of National Mortgage, giving it a first lien on the Abernethy property. The subordination agreement and deed of trust were recorded respectively at 12:23 p.m. and 12:26 p.m. on 18 July 1969.

[2] Nothing else appearing, title insurance operates to protect a purchaser or mortgagee against defects in or encumbrances on title *which are in existence at the time the insured takes his title.* *Mayers v. Van Schaick,* 268 N.Y. 320, 197 N.E. 296 (1935); *Trenton Potteries Co. v. Title Guarantee & Trust Co.,* 176 N.Y. 65, 68 N.E. 132 (1903); *Strass v. District-Realty Title Insurance Corp.,* 31 Md.

App. 690, 358 A. 2d 251, *cert. denied,* 278 Md. 736 (1976); *Butcher v. Burton Abstract Title Co.,* 52 Mich. App. 98, 216 N.W. 2d 434, *cert. denied,* 419 U.S. 998 (1974); 9 Appleman, Insurance Law and Practice, § 5208 at 9 (1943). "It is not prospective in its operation and has no relation to liens or requirements arising thereafter." *Mayers v. Van Schaick,* supra. "The risks of title insurance end where the risks of other kinds begin. Title insurance, instead of protecting the insured against matters that may arise during a stated period after the issuance of the policy is designed to save him harmless from any loss through defects, liens, or encumbrances that may affect or burden his title when he takes it." *Trenton Potteries v. Title Guarantee & Trust Co.,* supra.

[3] Here, the policy of title insurance issued by defendant insured the lien of plaintiff's deed of trust on the Abernethy property "all as of the 18th day of July, 1969, at 12:26 p.m. the effective date of this policy." This affirmative statement of coverage is also restated in the negative as an exclusion from coverage in subparagraph 3(d)(4) of the policy, which specifically excludes from coverage defects, liens other than certain statutory liens for labors and materials, encumbrances, adverse claims against the title as insured or other matters "attaching or created subsequent to the date hereof." The objective of this coverage is to protect against defects or other matters in existence at the time the policy is issued, unless otherwise excluded, which may, upon discovery at a later time, invalidate plaintiff's lien on the Abernethy property. Thus, the policy only insures: (1) that on 18 July 1969 fee simple title is vested in the Abernethys, and (2) that the subordination agreement and deed of trust are sufficient *on that date* to give plaintiff a first lien on the property. The policy does not insure against a breach of the subordination agreement by the Jonas W. Kessing Company or Village Associates of Chapel Hill *after* 18 July 1969 which invalidates the lien of plaintiff's deed of trust.

In the instant case the events which breached the conditions of the subordination agreement and rendered it ineffective occurred outside the stated coverage of the policy. On 24 July 1969 plaintiff authorized the direct disbursement to Village Associates of Chapel Hill, a limited partnership controlled by Jonas Kessing, of $125,000 in loan proceeds which plaintiff knew were required to be used to construct improvements on the Abernethy property.

This disbursement was knowingly made by plaintiff prior to the commencement of *any* construction on the property. No construction was ever begun nor were any funds ever expended for improvements on the Abernethy lots. Apparently, the moneys disbursed to Village Associates of Chapel Hill were misappropriated.

[4] One of the conditions imposed by the Abernethys in return for their agreement to permit plaintiff's deed of trust to become a first lien on their property was that the proceeds of loans secured by said deed of trust would be utilized *for the construction of improvements on their property.* The 24 July 1969 disbursement of loan proceeds in the sum of $125,000 and the subsequent misappropriation of these funds made compliance with this condition impossible and resulted in the nullification of the Abernethy subordination agreement and the loss of plaintiff's first lien on the Abernethy property.

Due consideration of the record impels the conclusion that the 24 July 1969 disbursement and the subsequent misappropriation of the loan proceeds caused the nullification of the subordination agreement and the loss of plaintiff's lien on the Abernethy property. There were no breaches of the subordination agreement as of 18 July 1969. Nor were there any fatal defects in the drafting or execution of the agreement on or prior to that date. Thus, the failure of the subordination agreement and the consequent loss of the lien cannot be attributed to matters in existence on the date the policy was issued. We hold, therefore, that the loss incurred by insured is not covered by the policy of title insurance sued upon in this case.

We note in passing that the loss suffered by plaintiff may be excluded from coverage under certain exclusionary provisions of the policy which are quoted below.

"3. *Exclusions from the Coverage of this Policy.* This policy does not insure against loss or damage by reason of the following:

*        *        *        *

(d) *Defects* . . . or other matters (1) created . . . by the Insured claiming loss or damage . . . ."

\* \* \* \*

"5. Pending disbursement of the full proceeds of the loan secured by the Deed of Trust described in Schedule 'A' hereof, this policy insures only to the extent of the amount actually disbursed, but increases as each disbursement is made in good faith, and without knowledge of any defects in, or objections to, the title, up to the face amount of the policy." Schedule B.

Since we decide the case on other grounds we need not determine whether these provisions exclude from coverage the loss in question.

For the reasons stated, the decision of the Court of Appeals is reversed.

The case is remanded to the Court of Appeals for further remand to the Superior Court of Orange County for entry of judgment in accord with this opinion.

Reversed and remanded.