[No. D008045. Fourth Dist., Div. One. Apr. 18, 1989.]

SANDRA L. BARCZEWSKI, Plaintiff and Appellant, v. COMMONWEALTH LAND TITLE INSURANCE COMPANY et al., Defendants and Respondents.

**COUNSEL**

Harris I. Steinberg and Levine, Steinberg and De Pasquale for Plaintiff and Appellant.

Thomas R. Fellows and Robinson & Wood for Defendants and Respondents.

## Opinion

**WIENER, Acting P. J.**—Plaintiff Sandra L. Barczewski, individually and as trustee of the Sandra L. McDowell-Barczewski Trust (collectively Sandra) appeals from the summary judgment in favor of the defendants Commonwealth Land Title Insurance Company and Union Land Title Company (collectively Commonwealth). We affirm.

### Factual and Procedural Background

This case and related litigation which we will describe revolves around the unsuccessful development of 260 acres of unimproved land in San Diego, commonly known as Rancho Del Sol.

For the purposes of our narrative Rancho Del Sol was owned at one time or another by Sandra, her husband Robert, family trusts, or wholly owned corporations. Sandra's complaint here entitled "tortious breach of insurance contract" seeks general, special, and punitive damages against Commonwealth alleging breach of the implied covenant of good faith and fair dealing, violations of Insurance Code section 790.03, subdivision (h) and breach of its fiduciary duty with respect to a cross-complaint filed by Commercial Acceptance Corporation (CAC). Sandra's action also requests declaratory relief to establish that Commonwealth had the duty to defend and to indemnify her with respect to part of CAC's verified cross-complaint. The court's granting of Commonwealth's motion for summary judgment denied Sandra all redress. To understand her claims against Commonwealth we refer to the allegations of CAC's cross-complaint which contain the following information.

Before 1984 Rancho Del Sol was owned by the "Robert Barczewski and Sandra Barczewski 1977 Family Trust." Robert was the trustee.

In July 1983 Robert asked CAC for a loan to develop the property. Ultimately, CAC loaned $1,321,000 to the Family Trust. The promissory note reflecting the loan was secured by a trust deed recorded July 29, 1983. In February 1984 Robert transferred title of the property to Pacific Solar Realty, a corporation wholly owned by him and his wife. Soon thereafter Pacific Solar Realty filed a bankruptcy petition seeking relief under Chapter XI. During these proceedings title was transferred to Pacific Solar Properties, Inc., a corporation wholly owned by Robert. During the summer of 1984 Robert renewed his negotiations with CAC hoping to develop the property with CAC in a joint venture. While these negotiations were underway Robert, on behalf of Pacific Solar Properties, Inc., executed a $3.2 million trust deed on August 9, 1984, naming himself as trustee and the

Barczewski Family Trust as beneficiary. This trust deed was recorded on September 14, 1984, and was insured by the terms of a standard title insurance policy issued by Commonwealth effective September 14, 1984, at 5 p.m.

The negotiations for the proposed joint venture progressed through September 20, 1984, when the parties signed a tentative "joint venture agreement." The agreement, although signed, is described by us as tentative, because the parties orally agreed to make numerous later amendments. These amendments included CAC's commitment to make an additional secured loan of $2,550,000 to Pacific Solar Properties Inc. to develop the property, to be paid in installments secured by trust deeds. These trust deeds were to be given priority over other encumbrances on the property held by Pacific Solar Properties, Inc. for the Family Trust. CAC did not know that the $3.2 million trust deed in favor of the Family Trust had been recorded.

CAC loaned the $2,550,000; the Barczewskis allegedly diverted and misappropriated the funds for their own personal use; Rancho Del Sol was not developed.

After reaching the September 20, 1984, agreement with CAC, Robert assigned his beneficial interest under the insured September 14 trust deed to Sandra which she then assigned to herself as trustee of the Sandra L. McDowell/Barczewski Trust.

The foregoing events are drawn from the allegations set out in CAC's cross-complaint containing 15 causes of action against Pacific Solar Properties, Inc., Robert individually and as trustee of the Barczewski Family Trust, and Sandra individually and as trustee of the Sandra L. McDowell/Barczewski Trust. The first 14 causes of action seek damages on traditional tort/contract theories of fraud and misrepresentation, conversion, breach of fiduciary duty, breach of contract, and bad faith arising out of the September 20, 1984, agreement and the Barczewskis' later conduct. CAC's cross-complaint does not seek to quiet title nor was a lis pendens filed.

Our concern here is with CAC's 15th cause of action for declaratory and injunctive relief alleging CAC's $2,550,000 loan should be given priority over the earlier recorded September 14, 1984, trust deed. CAC's claim for reversal of priorities is premised on contractual obligations of legal and equitable subordination or the invalidity of the earlier trust deed because it lacks consideration.

Sandra requested Commonwealth to defend her as to this cause of action. Commonwealth declined to do so. The trial court agreed with Commonwealth. This appeal ensued.

## DISCUSSION

■ The relatively simple issue that emanates from the less than simple events described above, is whether Commonwealth's title insurance policy afforded coverage to Sandra such that it had a duty to indemnify or at least to defend her.

■ Preliminarily we reject Sandra's attempt to limit the scope of our review by restricting our inquiry to the applicability of a specific exclusion in the title insurance policy, exclusion 9(a), asserting this was Commonwealth's sole basis for its summary judgment. Sandra says we cannot review Commonwealth's additional arguments presented in this appeal which were not part of the record below.

While it is preferable for the trial court sitting in a law and motion department to have the benefit of every argument before reaching a decision, matters of law which will support the trial court's ruling may be considered on appeal even when they are not presented to the trial court. (See e.g., *Snider* v. *Snider* (1962) 200 Cal.App.2d 741, 756 [19 Cal.Rptr. 709].) Although decisions resting on factual matters must first be addressed to the trial court, an appellate court is designed to decide matters of law resting on undisputed facts. Thus here there is no reason for us to myopically focus on exclusion 9(a) when the broader question of insurance coverage is properly before us.

■ Our decision to examine this case with an enhanced perspective is also prompted by our view that Sandra's attack on the judgment is an attack on the concept of title insurance itself. Her contentions seem to hinge on a premise that a policy of title insurance covers matters *outside* the chain of title and which do *not* appear of record. We say this because her pleadings and briefs acknowledge that CAC expressly alleges the "Family Trust deed was recorded first and was hence entitled to legal priority as a matter of public record" but that these legal priorities should be reversed because of allegedly fraudulent transactions. While Sandra vigorously disputes the correctness of many of CAC's allegations, she does not contest the fact the allegations relate to matters outside the public record. It is axiomatic that matters outside the public record are outside the chain of title which a title insurer must examine before issuing a standard California Land Title Association policy, the type of policy which was issued in this case. This type of insurance cannot include matters involving personal dealings between individuals even though those dealings may involve the development of real property when those dealings are not part of the public record. If we were to accept Sandra's blanket assertion of coverage in this case, we would dramatically change the function and purpose of title insurance with enormous social and financial repercussions. We refuse to do so. Although our rejec-

tion of Sandra's basic premise may be a sufficient reason for us to affirm the judgment, we nonetheless discuss the authorities she relies upon in greater detail.

■■■ Commonwealth's policy required it to defend and indemnify Sandra in the event claims were made against her by reason of "5. Invalidity of the lien of the insured mortgage upon said estate or interest . . . [¶] (6) Priority of any lien or encumbrance over the lien of the insured mortgage, said mortgage being shown in Schedule B in the order of its priority; or [¶] (7) Invalidity of any assignment of the insured mortgage, provided such assignment is shown in Schedule B." In denying the claim Sandra emphasizes that Commonwealth stated that "all matters in the original action were either post policy events or excluded from coverage." Sandra points out that in spite of this general statement Commonwealth's summary judgment motion relied solely on the applicability of the boilerplate language of exclusion 9 which provides in part: "Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not shown by the public records and not otherwise excluded from coverage but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy . . ."

In light of the foregoing Sandra asserts the trial court had no choice but to deny a motion for summary judgment because exclusion 9 had been judicially determined in *Safeco Title Ins. Co.* v. *Moskopoulos* (1981) 116 Cal.App.3d 658 [172 Cal.Rptr. 248, 18 A.L.R.4th 1301] to be "ambiguous" as a matter of law. Although Sandra correctly says *Moskopoulos* contains language relating to the ambiguity of that provision (at p. 667) she overlooks other, equally important language. *Moskopoulos* also states that, "the consequence flowing from a finding of ambiguity is *not* eradication of the ambiguous statement, but the interpretation of it against the insurer." (*Ibid.*, italics added.) *Moskopoulos* holds that notwithstanding the policy's ambiguity the insured was not entitled to recover explaining that there is no coverage when the real property transaction between the individuals had no effect on the public record.

In *Moskopoulos* the insured (Moskopoulos) was a real estate broker who, after somewhat acrimonious negotiations including litigation and a settlement with his former clients, acquired their house on Mulholland Drive. Moskopoulos's title was insured by Safeco. After the deed was recorded the irritated sellers along with an equally frustrated potential purchaser, Martin Klass, sued Moskopoulos (the Klass action) in six causes of action alleging interference with contractual relations; for a constructive trust; fraud; breach of fiduciary duty; rescission; and abuse of process, all of which were

based on events leading up to Moskopoulos's purchase of the house. Mosko-poulos tendered the defense of the action to Safeco. Safeco agreed to defend subject to reserving its rights and instituting a declaratory relief action to determine coverage. In that action *(Moskopoulos)* the court held the Klass action was outside the coverage of the policy, expressly stating the ambiguity of provision 9 did not require a different result. *Moskopoulos* first recited the frequently stated maxims that " 'any ambiguities in language of a policy are to be construed against the insurer' " and "the duty to defend is broader than the obligation to indemnify." (116 Cal.App.3d at p. 664, citing *Gray* v. *Zurich Ins. Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].) *Moskopoulos* then applied these principles which it said compelled "the conclusion that Safeco had no duty to provide appellant's defense." (At p. 665.)

"The facts alleged in the Klass action pertain to the conduct of [Moskopoulos] and [his agent] in their relations with the [sellers]. The Klass action relates not to [Moskopoulos's] title in the property, but to the manner in which he acquired title. Under [Moskopoulos's] theory that the Klass action and lis pendens constitute a defect in the title and render the title unmarketable, a title company insuring a buyer of real property under a standard form title policy such as the Safeco policy, notwithstanding an otherwise impeccable title, would have a potential liability to defend the insured in any third party action brought against the insured seeking rescission of the sale on any ground set forth in Civil Code section 1689, subdivision (b), or seeking to impress a constructive trust on the real property for the benefit of another, unless eliminated from coverage by the exclusionary clause. No reasonable construction of the policy could yield that result, nor could the insured reasonably expect the insurer to provide a defense under those circumstances." (116 Cal.App.3d at pp. 665-666, fns. omitted.)

Further, *Moskopoulos* explained: "The allegations in the Klass complaint allege intentionally tortious conduct by appellant, not a defect in his title. There is not a suggestion in the record or the briefs of any matter constituting a defect in or lien or encumbrance on the record title to the Mulholland property, except as disclosed in the policy. Nor is there any suggestion of any off-record risk in the chain of title coming within the policy coverage, such as a forged, altered or improperly delivered deed, incompetency, incapacity, marital rights, or irregularities in any probate proceeding. As to unmarketability of appellant's title, there is nothing in the record that indicates that the title was in any way unmarketable on the effective date of the policy. Any effect the recording of the Klass lis pendens had on the marketability of the title occurred after the effective date of the policy and is outside the policy coverage. An insurance company may limit the coverage of a policy issued by it. When it has done so, the plain language of the limitation must be respected. [Citation.] Neither appellant's conduct

leading up to the Klass action or the filing of the Klass action . . . can reasonably be construed within the policy coverage." (116 Cal.App.3d at p. 666.)

Thus *Moskopoulos* makes clear that tortious conduct involving behavior which does not constitute matters on the public record is not within coverage afforded in the standard policy of title insurance. In such circumstances there is no legal basis for an insured to have a reasonable expectation of coverage. Moreover, since there is no possibility Commonwealth would be obligated to indemnify Sandra on the facts as alleged in the complaint, there was no duty to provide a defense. (See *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917, 942 [122 Cal.Rptr. 470]; see also *Jaffe* v. *Cranford Ins. Co.* (1985) 168 Cal.App.3d 930, 933-934 [214 Cal.Rptr. 567].)

■ Our decision also reflects our rejection of Sandra's suggestion that the trial court here was required to limit its decision to an analysis of the specific argument presented. A trial court should be complimented, not criticized when it recognizes there is another valid and legal reason to support a summary judgment motion when it can do so without depriving the responding party of a fair hearing. Here the court's action was neither unfair nor improper. The court's prudent use of judicial resources was well within the exercise of its power.

### DISPOSITION

Judgment affirmed.

Benke, J., and Huffman, J., concurred.